### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | CIVIL ACTION NO. 04-4902 |
| v. | : | |
| GREG CHANCLEY | : | CRIMINAL NO. 03-374-01 |

### MEMORANDUM

**Baylson, J.**                                                                                   February 23, 2006

Petitioner Greg Chancley ("Chancley") filed an Amended Petition for Writ of Habeas Corpus on December 21, 2004, pursuant to 28 U.S.C. § 2255, through his retained counsel. Previously, on October 19, 2004, Petitioner had filed a pro se Writ, which the Court has considered superceded by the Amended Petition. In his Amended Petition, Chancley asserts that he had ineffective assistance of counsel in inducing him to sign a plea agreement, ineffective assistance of counsel in failing to object to certain enhancements at sentencing, withdrawing a motion for the "safety valve" reduction, and not making other objections, and that the Court erred in sentencing Chancley by taking into account a firearm enhancement and declining to give him a "safety valve" reduction.

The government moved to dismiss the Petition because the plea agreement contained a waiver of Chancley's right to appeal or file collateral attack on his conviction. After argument was held on March 2, 2005, the Court entered an Order granting the government's Motion to Dismiss as to the guilty plea, but denying it as to the claim of ineffective assistance of counsel at sentencing, and setting an evidentiary hearing as to the latter.

A.     **Reasons for Granting the Motion to Dismiss in Part as to the Guilty Plea**

The starting point for the Court's analysis is the one count information in which Chancley was charged with possession with intent to distribute in excess of 50 grams, approximately 87 grams, of cocaine-based or "crack" in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). As customary when prosecution is initiated by information, Chancley had signed a plea agreement which contains the following material provisions:

   1.   Agreement to waive indictment and plead guilty to Count I of the information.

   2.   An understanding that the guilty plea carried with it a ten-year mandatory minimum term of imprisonment.

   3.   A stipulation that the amount of drugs possessed by the Defendant was 87 grams, which resulted in a base offense level of 32.

   4.   An agreement to waive all rights of appeal or collaterally attack the conviction, sentence, or any other matter relating to this prosecution.

   5.   The Defendant agreed that he was "satisfied with the legal representation provided" by his counsel, that they had discussed the plea agreement, and the Defendant admits that he is guilty.

The plea agreement was signed by Chancley and his counsel, and was dated June 25, 2003.

At the plea hearing, which also took place on June 25, 2003, Chancley was represented by Frank M. Spina, II, Esquire. In the plea colloquy, Chancley acknowledged signing the plea agreement, that he had reviewed it with his lawyer, and that up to that point his lawyer had done everything for him that he wanted (N.T. 6). Chancley agreed that he had been in possession of 87 grams of crack cocaine, that he understood he was subject to a ten-year minimum mandatory sentence, that he was pleading guilty because "I read over the papers and I felt that was the right

thing to do" and he specifically admitted that he committed the offense. (N.T. 10).[1] Chancley replied affirmatively when he was also asked if he understood that he had given up his right to appeal and by pleading guilty, he understood "you are giving up your rights and you are going to be stuck with the sentence I give you." (N.T. 12).

The prosecutor then recited the facts that the government would introduce if the case had gone to trial, which included the fact that over 300 packets of crack cocaine with the stipulated total weight of approximately 87 grams had been found in Chancley's apartment while Chancley was present. Chancley admitted those facts. (N.T. 18). After this eighteen-page colloquy, the Court made a specific finding that the "Defendant is alert, conscious, able of entering an informed plea. The plea is a knowing and voluntary plea supported by a basis of fact and knowledge of the offense plead to." (N.T. 19).

The Court granted the government's Motion to Dismiss as to the guilty plea because Chancley clearly acknowledged that he was guilty, he acknowledged that he had discussed his plea with his attorney, he said he was satisfied with his counsel, he agreed to the government's rendition of the facts which undisputedly was sufficient to find that Chancley possessed a large amount of crack cocaine. There does not appear to be any reason why the guilty plea should be subject to collateral attack, because Chancley knowingly understood in the plea agreement that he had given up his right to appeal and his right to collateral attack his plea.

As to the merits of the government's Motion to Dismiss, under the principles of U.S. v.

---

[1] At N.T. 11, the Court mis-spoke and asked the Defendant if he understood that the mandatory minimum was the "maximum" sentence, but this was clarified by the Defendant answering affirmatively to the next question "with a mandatory minimum of ten years, you understand that I may have to sentence you to a ten-year prison term?"

Khattak, 273 F. 3d. 557 (3d Cir. 2001) "waivers of appeals are generally permissible if entered into knowingly and voluntarily, unless there is a miscarriage of justice."  Although the Third Circuit has not specifically addressed the issue of waiver of collateral attack, Judge Yohn, in a characteristically thorough opinion in U.S. v. Fagan, 2004 WL 2577553 (E.D. Pa. 2004), reviewed a number of cases and concluded that the principles of Khattak should similarly apply to a waiver of collateral attack.

It should be noted that in this case, although the plea agreement contains an explicit waiver of the Defendant's right to appeal and collaterally attack the sentence, in the plea colloquy the Court only specifically asked the Defendant about his waiver of appeal.  Nonetheless, the Court concludes that the record is sufficient to show the absence of any issues that would warrant a collateral attack on the guilty plea.  There is no miscarriage of justice as to the plea of guilty.

Further, even if the dismissal of the Petition as to the guilty plea was not proper, the Court did not see any facts alleged or present in the record, under the principles set forth in United States v. McCoy, 410 F.3d 124 (3d Cir. 2005), to warrant an evidentiary hearing as to the guilty plea.  Given Petitioner's knowing signature on the plea agreement and his admissions at the plea hearing, summarized above, Petitioner's allegations as to ineffective assistance of counsel as to the guilty plea itself are frivolous.  Petitioner acknowledged both his rights and his guilt in both the plea agreement and the plea colloquy. Under the leading Supreme Court case of Strickland v. Washington, 466 U.S. 668 (1984), the petitioner must establish that his counsel's performance was deficient, and must show that the allegedly deficient performance prejudiced the Petitioner.  However, McCoy suggests that district courts should first examine prejudice. There is no possibility that counsel's alleged incompetence prejudiced petitioner to the point that

he pled guilty.

**B.    Reasons for Denying the Government's Motion
To Dismiss as to the Sentencing Hearing**

Applying the principles of McCoy to Petitioner's allegation that his counsel was ineffective by withdrawing the Motion for a Downward Departure to give Petitioner the benefit of the "safety value" provision, the Court rejected the government's argument that Khattak required dismissal of this § 2255 petition. Petitioner makes an allegation of ineffective assistance of counsel sufficient to satisfy the McCoy standards, and the relevant facts arose subsequent to Petitioner executing the waiver of collateral attack in the plea agreement. Without specific appellate approval of such waivers in this unique factual situation, the Court scheduled an evidentiary hearing.

**C.    Summary of the Evidence at the Sentencing and at the Evidentiary Hearing**

In two separate sessions, on November 30, 2005 and December 13, 2005, the Court heard testimony from Petitioner, two investigators, Petitioner's counsel, Frank Spina, Esquire, and the prosecutor, Tina Gabbrielli, Esquire. After reviewing the entire record, the Court will deny Petitioner's Petition for post-conviction relief.

In this case, applying the Strickland test, if the Petitioner's allegations were believed, Petitioner has surely suffered prejudice because the Court imposed a mandatory minimum of ten years, whereas if Petitioner's counsel had argued for the safety valve, and the Court would have found it applied, the sentence indisputably would have been much less. Therefore, the Court must examine the claim that Petitioner's counsel was ineffective.

1. **<u>Sentencing Record</u>**

Under the Sentencing Guidelines and statute, the safety valve provision allows the Court to impose a sentence below a mandatory minimum under certain specified conditions. § USSG 2D1.1(b)(6). One of the criteria for eligibility of the safety valve is that the defendant did not possess a firearm in connection with the offense, and that the defendant truthfully provided all information that the defendant had regarding his offense. U.S.S.G. § 5C1.2(1)(2) and (5).

There is no dispute that Chancley's offense required a ten-year mandatory minimum. Subsequent to the preparation of the original presentence report, which recommended application of the safety valve, the government submitted a letter dated August 21, 2003 to the probation officer, in which the government objected to the Defendant securing a reduction in his sentence because of the "safety valve" provided under U.S.S.G. § 2D1.1(b)(6), (with reference to § 5C(1.2) and (5), and 18 U.S.C. § 3553(f). The letter notes that the government's plea agreement with the Defendant did not charge possession of a firearm, but the government submitted that the relevant conduct surrounding the defendant's arrest allowed an inference concerning possession of a firearm sufficient to conclude that Defendant was not entitled to the safety valve provision. It should be noted that nothing was said about the firearm in the plea agreement or during the guilty plea colloquy. As a result of the government's objection, the guideline calculated in the revised presentence report was changed to eliminate the safety valve reduction, and also the offense level increased to show an enhancement for possession of a firearm.

At the sentencing on August 21, 2003, defense counsel, with Defendant's explicit agreement, told the Court that the Defendant was withdrawing the motion that had been filed by his counsel seeking a departure from the mandatory minimum because of the safety valve

provision of the Sentencing Guidelines. See N.T. 5. The Court indicated, before imposing sentence, that without the safety valve, the mandatory ten-year minimum would be required and the Defendant acknowledged his understanding of that fact. (N.T. 7). After further discussion and hearing several witnesses, the Court imposed the mandatory minimum of 120 months imprisonment.

###    2.    Evidentiary Hearing

In his Petition, Chancley is represented by experienced counsel who has presented arguments that are simply not supported by the credible facts. The Court credits the testimony of Mr. Spina, who testified that he arranged for the Petitioner to explain in a proffer to the government the circumstances of his arrest; however, as both Mr. Spina and Ms. Gabbrielli related, the government representatives at the proffer felt that Petitioner was not being honest about the facts, particularly concerning his explanation denying knowledge about a gun that had been found in the room where Petitioner was arrested.

From the testimony of Ms. Gabbrielli at the evidentiary hearing, which the Court also accepts as credible, the Court finds that Petitioner was not eligible for the safety valve departure. Ms. Gabbrielli testified about the proffer with Defendant (N.T. 12/13/05, pp. 7-19) and her negotiations with Mr. Spina in which Mr. Spina tried to secure the safety valve departure for his client. (N.T. 12/13/05, pp. 26-28). Ms. Gabbrielli refused to consider this, and as Ms. Gabbrielli advised Mr. Spina, there was a chance, given all the circumstances, including evidence the government would produce at sentencing, if the Defendant insisted on pursuing a request for relief under the safety valve, that the Court could impose a sentence higher than the ten-year mandatory minimum.

Although the Petitioner testified at the evidentiary hearing on November 30, 2005, the Court does not credit his testimony. Petitioner first denied any allegation about the gun, and then he contradicted Mr. Spina about their discussions concerning the safety valve and the withdrawal of the motion for downward departure.

Mr. Spina testified more credibly, that he discussed with Defendant the options which the government had presented, and based on these, Defendant himself decided to withdraw his objections to the presentence investigation report. See N.T. 11/30/05, pp. 31-37, 71, 72, 155. The record discloses Defendant's own decision to withdraw his objections, on which the Court examined the Defendant. See N.T. 8/21/03 at pp. 5-6 and also N.T. 11/30/05, pp. 156-161, Gov. Ex. 25. Thus, Mr. Spina's explanation as to why he withdrew the Motion for Downward Departure based on the safety valve, and did not object at sentencing to the imposition of the ten-year mandatory minimum, was a valid defense choice made by Petitioner himself, supported by the evidence and the good judgment of Mr. Spina, which the Court also finds as a fact.

Petitioner's post-hearing brief attempts to establish that Petitioner was entitled to the safety valve, and this now entitles him to a new sentencing hearing. The Court disagrees. The purpose of the evidentiary hearing in this case was to determine if there was evidence to support Petitioner's claims that Mr. Spina rendered unconstitutionally ineffective counsel. The issue is not to debate the merits of the government's view of the evidence in having objected to the safety valve. There was a substantial risk that the Court would impose a sentence greater than 120 months if the Court rejected Petitioner arguing that he was entitled to the safety valve. The inherent language of the safety valve provision, just as many other provisions of the Sentencing Guidelines, gives substantial discretion to the prosecutor in relating to the Court the underlying

facts concerning the investigation. There is no doubt, given the specific language of the safety valve provision, that disputes can and do arise as to whether it is applicable. Although it is within the power of a sentencing judge to overrule the government's objections to the application of the safety valve, the purpose of the inquiry on a post-conviction petition is not whether the prosecution's objections were well-founded, or whether the Court made a mistake in not granting the safety valve, but to determine whether Petitioner was deprived of his constitutional right to effective assistance of counsel.

Having had an evidentiary hearing, the Court finds that Mr. Spina, faced with the government's view of the evidence and its intractable opposition to the safety valve, did his best for his client and gave the client his options. There are no credible facts to support any claim that Mr. Spina was not competent.

Following the evidentiary hearings, the Court finds that Petitioner fully understood that he faced a ten-year mandatory minimum sentence. Petitioner's contention, that Mr. Spina was ineffective in not pursuing objections to the Sentencing Guideline calculations and to withdraw a request under the safety valve provision, is rejected as without basis in fact.

Based on the entire record, the Court finds that there was no miscarriage of justice and no showing of ineffective counsel. Defendant's Petition for Post Conviction Relief will be denied. No certificate of appealability will be issued.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | CIVIL ACTION NO. 04-4902 |
| v. | : | |
| GREG CHANCLEY | : | CRIMINAL NO. 03-374-01 |

### ORDER

AND NOW, this 23rd day of February, 2006, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that the Petition for Post-Conviction Relief under 28 U.S.C. § 2255 is DENIED. A certificate of appealability is DENIED. The Clerk shall close this case.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\Criminal Cases\03-374 U.S. v. Chancley\Chancley Memorandum re Amended Petition Writ Habeas Corpus.wpd